# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

CHRISTINA A. BECKERT,

      Plaintiff,

  v.
                          **Civil Action 2:19-cv-2226**
                          **Judge Michael H. Watson**
COMMISSIONER OF SOCIAL
                          **Magistrate Judge Chelsey M. Vascura**
SECURITY,

      Defendant.


## REPORT AND RECOMMENDATION

Plaintiff, Christina A. Beckert ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed her application for a period of disability and disability insurance benefits on March 3, 2015. (R. 18.) In her application, Plaintiff alleged a disability onset of December 10, 2014. (*Id.*) Plaintiff's application was denied initially on March 28, 2016, and upon reconsideration on June 15, 2016. (*Id.* at 157, 171–72.) Plaintiff sought a hearing before an administrative law judge. (*Id.* at 185–86.) Administrative Law Judge Heidi

Southern (the "ALJ") held a hearing on April 25, 2018, at which Plaintiff, represented by counsel, appeared and testified. (*Id*. at 18.) Vocational expert Eric W. Pruitt (the "VE") also appeared and testified at the hearing. (*Id*. at 18, 35.) On May 9, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 18–36.) On March 27, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. at 1–5.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors (ECF No. 10), Plaintiff asserts that the ALJ failed to properly evaluate the opinions of her treating psychiatrists, Drs. Gilman and Brandemihl, and that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence.

## II.    THE ADMINISTRATIVE DECISION

On May 9, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 18–36.) The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2019. (*Id*. at 20.) At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

gainful activity since December 1, 2014, the alleged onset date of Plaintiff's disability. (*Id.*) At

step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc

and joint disease of the spine; a post-traumatic stress disorder; an anxiety disorder; a depressive

disorder; and a substance abuse disorder. (*Id.* at 21.) At step three, the ALJ found that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled one of

the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

At step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in 20
> C.F.R. 404.1567(b) except the claimant could frequently climb ramps and stairs,
> but would be precluded from climbing ladders, ropes, and scaffolds. The claimant
> could frequently balance, but would be limited to occasional stooping, kneeling,
> crouching, and crawling. The claimant must avoid exposure to unprotected heights
> or moving mechanical parts. The claimant could perform simple, routine tasks with
> occasional interaction with supervisors and co-workers, but she would be precluded
> from interacting with the public.

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(*Id.* at 23.)  In assessing Plaintiff's RFC, the ALJ considered medical opinion evidence from several sources.  Relevant to this appeal, the ALJ assigned "no more than little weight" to the March 2016 opinion of Plaintiff's treating psychiatrist, Elena Gilman, M.D.  (*Id.* at 30–31.)  The ALJ assigned "some weight" to each the March 2016 opinion of State agency consultant Anna Franco, Psy.D. and the June 2016 opinion of State agency consultant, David Clay, PhD.  (*Id.* at 33–34.)  Last, the ALJ assigned "some weight" to the August 2017 opinion of Plaintiff's treating psychiatrist, Adam Brandemihl, M.D., and "no more than partial weight" to Dr. Brandemihl's March 2018 opinion.  (*Id.* at 32–33.)  In addition to the medical opinion evidence, the ALJ considered opinion evidence from Plaintiff's therapist, Joseph Catania, LISW.  (*Id.* at 31–32.)  She assigned "no more than some weight" to Mr. Catania's August 2017 statement and "no more than little weight" to his March 2018 statement. [2]  (*Id.*)

At step five of the sequential process, the ALJ found that Plaintiff is not capable of performing past relevant work as a graphic artist.  (*Id.* at 34.)  Relying on the VE's testimony, the ALJ found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (*Id.* at 35.)  Examples include routing clerk, labeler, and production line solderer.  (*Id.*)  The ALJ further found that Plaintiff is capable of making a successful adjustment to such employment.  (*Id.*)  The ALJ therefore concluded that Plaintiff is not disabled under the Social Security Act.  (*Id.* at 41.)

---

[2]The undersigned notes that, because Plaintiff filed her initial application for disability benefits before March 27, 2017, a social worker is not considered an acceptable medical source.  Mr. Catania's opinions are therefore not considered medical opinions.  *See* 20 C.F.R. § 404.1527(a)(1).

## III.    RELEVANT EVIDENCE OF RECORD

**A.    Treating Psychiatrist, Elena Gilman, M.D.**

Plaintiff first treated with Dr. Gilman on June 4, 2015.  (R. at 476–78.)  Plaintiff continued to see Dr. Gilman through February 2016.  (*Id*. at 436–78.)  During that time, Dr. Gilman diagnosed Plaintiff with Bipolar Disorder Type I – Mixed/Depressed and Borderline Personality Disorder.  (*Id*. at 436, 466, 472.)

Dr. Gilman observed the following during an October 6, 2015 visit:

> Cooperative.  Good eye contact.  Looks anxious.  Mood depressed and irritable. Affect full range.  Thoughts are poorly organized. . . . Poor concentration, forgetfulness.  Low energy, depression, low motivation.  Poor sleep.

(*Id*. at 472.)  At the next appointment, on November 5, 2015, Dr. Gilman noted as follows:

> Came on time.  Feels very depressed.  Confused thoughts.  High frustration level. Not able to copy with routine.  She was not able to apply for SSI, because got confused with questionnaire and required assistance.  Very hopeless, low self-esteem.  "I hat[e] myself . . . ."  She drinks some days to put self to sleep all day (in order to be escaped from the reality. . . ) . . . She denies negative thoughts now, but reports having intermittent [suicidal ideation].  She contacted for safety today.

(R. at 468.)  By January 11, 2016, Dr. Gilman recorded that Plaintiff showed improvement:

> [Patient] has been compliant with meds and feels better. More organized thoughts, more consistent.  No racing thoughts.  No hopelessness.  [Patient] reports mood lability, cries easily (she does not feel deeply depressed), emotional.  Anxiety is better controlled. Sleep sufficient. Behavior is controlled.  No [suicidal/homicidal ideation].  NO weird behavior.  He[r] sister is moving to Florida next month. [Patient] is planning to move to Florida with her.

(R. at 454.)  In treatment notes for their final appointment on February 2, 2016, Dr. Gilman wrote as follows:

> 30 mins late.  Busy with packing.  She is moving to Florida with her sister in 2 weeks.  [Patient] is tired, but overall she is better organized[.]  Mood improved. Thoughts are goal directed.  [Patient] has plans for work in Florida.  [Patient] reports still being easily irritable, not much changes since started Lamictal. Tolerates it well.  Sleep good.  No racing thoughts.  NO negative thoughts.  NO psychotic s-ms.  Insight and judgement is improving.  [Patient] is compliant with treatment, [a]ppreciates care.

(R. at 451.)

Dr. Gilman completed a Short-Form Evaluation for Mental Disorders on March 10, 2016. (*Id*. at 30–31, 436–38.)  There, Dr. Gilman indicated that Plaintiff presented with a disheveled appearance, spoke with pressured speech, and was irritable, though she exhibited cooperative behavior and normal motor activity.  (*Id*. at 436.)  Dr. Gilman opined that Plaintiff had moderate impairments to her concentration, memory, and judgment, and that her mood was anxious and depressed.  (*Id*. at 436–37.)  Under the section titled "Progress in Treatment and Prognosis," Dr. Gilman wrote that Plaintiff "is currently doing poorly and requires ongoing treatment to stabilize symptoms at this time."  (*Id*. at 438.)  Finally, Dr. Gilman opined that Plaintiff had "Poor"[3] functioning in all areas, including: understand, remember, and carry out complex instructions; understand, remember, and carry out simple instructions; maintain concentration, attention and persistence; perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek without interruptions from psychologically based symptoms; and respond appropriately to changes in a work setting.  (*Id*.)

## B.    State Agency Consultants, Anna Franco, Psy.D. and David Clay, PhD

On March 28, 2016, Dr. Franco, a State agency consultant, issued an opinion on Plaintiff's disability claim at the initial level.  (R. at 145–57.)  Dr. Franco reviewed Dr. Gilman's progress notes and March 2016 opinion.  (*Id*.)  Dr. Franco found that Plaintiff "ha[d] shown much improvement . . . due to complianc[e] with [treatment], meds."  (*Id*. at 150.)  As a result, she concluded that the "[s]tatements [in Dr. Gilman's March 2016 opinion] are not consistent with current medical evidence in file.  Recent visits suggest claimant's condition is improving."

---

[3] The form provides four rating options, ranked by severity: Unlimited, Good, Fair, and Poor. "Poor" means "[t]he evidence supports the conclusion that the individual cannot usefully perform or sustain the activity."

(*Id*. at 152.) Dr. Franco further concluded that Plaintiff had mild difficulty in maintaining social functioning; moderate difficulty in maintaining concentration, persistence or page; moderate limitations in the ability to understand and remember detailed instructions, moderate limitations in the ability to carry out detailed instructions; moderate limitations in the ability to interact appropriately with the general public; and moderate limitations in the ability to respond appropriately to changes in the work setting. (*Id*. at 151–54.) She "suggest[ed] simple 1-2 step work w[ith] limited public contact." (*Id*. at 154.)

On June 15, 2016, State agency consultant David Clay, PhD issued an opinion on Plaintiff's disability claim at the reconsideration level. (*Id*. at 160–72.) Dr. Clay affirmed Dr. Franco's initial opinion, finding that no additional evidence showed worsening of Plaintiff's condition. (*Id*. at 166.)

## C.    Treating Psychiatrist, Adam Brandemihl, M.D.

Dr. Brandemihl began treating Plaintiff in late 2016.[4] On August 30, 2017, Dr. Brandemihl completed a Mental Impairment Questionnaire regarding Plaintiff. (*Id*. at 558–62.) In that Questionnaire, he indicated that Plaintiff was diagnosed with Post Traumatic Stress Disorder, Anxiety Disorder, and Major Depressive Disorder, with a "poor" prognosis. (*Id*. at 558.) Dr. Brandemihl went on to identify several work activities in which Plaintiff's limitations resulting from her mental impairment were either "Marked" or "Extreme."[5] (*Id*. at 559–60.) He

---

[4] The undersigned notes internal inconsistencies regarding the date on which Plaintiff was first seen by Dr. Brandemihl. (R. at 558, 627.)

[5] The worksheet provides five rating options, ranked by severity: None, Mild, Moderate, Marked, and Extreme. "Marked" means "[f]unctioning independently, appropriately, effectively, and on a sustained basis is seriously limited; this impairment would interfere with functioning one-third but less than two-thirds of the time on a consistent basis in an 8-hour workday." "Extreme" means "[n]ot able to function in this area independently, appropriately, effectively, and on a sustained basis."

7

opined that Plaintiff had marked limitations in her ability to understand, remember, or apply information and to interact with others. (*Id.* at 561.) He further opined that Plaintiff had extreme limitations in her ability to concentrate, persist, or maintain pace and to adapt or manage oneself. (*Id.*) Dr. Brandemihl also opined that Plaintiff would be absent from work more than four days each month due to mental health. (*Id.*) He concluded by stating "I consider [Plaintiff] totally and permanently disabled due to her conditions." (*Id.* at 562.)

On March 12, 2018, Dr. Brandemihl wrote a letter opinion summarizing Plaintiff's diagnosis and treatment. It states:

> [Plaintiff] is a 42-year old female whom I first saw on November 2nd of 2016 for an initial evaluation at which time I diagnosed her with Post Traumatic Stress Syndrome, Major Depressive Disorder as well as an Anxiety Disorder. She experiences nightmares almost every night, flash backs, intrusive thoughts and images, a hyper startle response and a sense of a shortened future. She is also consistently dysphoric, tearful, hopeless, has difficulty concentrating and doesn't enjoy the activities she once did. [Plaintiff] worries a lot and feels tense and on edge. She is irritable at times and is easily overwhelmed.
>
> She is taking Pristiq for her PTSD, depression and anxiety, Seroquel for PTSD and Klonopin for her anxiety. Despite being on therapeutic doses of the appropriate medications and seeing a therapist consistently, her symptoms have not improved. I consider [Plaintiff] to have reached maximum medical improvement and I believe that she is totally disabled at this point. Additionally, I do not believe that her marijuana use is causing her symptoms.

(*Id.* at 627.)

## D.    Therapist, Joseph Catania, LISW

Mr. Catania has seen Plaintiff for weekly appointments since February 21, 2017. (*Id.* at 553, 702.) On August 17, 2017, Mr. Catania also completed a Mental Impairment Questionnaire regarding Plaintiff. (*Id.* at 553–57.) There, he stated that Plaintiff "has extreme difficulty making decisions, staying on task due to acute exacerbation of psychiatric symptoms stemming from 911 while in NYC." (*Id.* at 553.) Mr. Catania then identified several work activities in which Plaintiff's limitations resulting from her mental impairment were either "Marked" or

"Extreme."[6]  (*Id*. at 554–55.)  He opined that Plaintiff had marked limitations in her ability to understand, remember, or apply information, to interact with others, and to adapt or manage oneself, and extreme limitations in her ability to concentrate, persist, or maintain pace.  (*Id*. at 556.)  Mr. Catania further opined that Plaintiff would be absent from work more than four days each month due to mental health.  (*Id*.)

Mr. Catania also submitted a letter opinion summarizing Plaintiff's diagnoses and treatment.[7]  It states, in relevant part:

> I began treating [Plaintiff] on February 21, 2017.  She reported that her symptoms emerged at around age 14.  She recalled feeling depressed and having anxiety to the degree that prompted her to drop out of school at age 15.  There were allegations that she was sexually harassed by a teacher but no disciplinary action was taken at that time.  [Plaintiff] was born in New Orleans and stated that she moved around quite frequently early in her childhood.  In addition to the trauma history described above, [Plaintiff] was living in New York City in 2001 during the attack on the twin towers and witnessed that devastation first hand.  She stated that she felt guilty surviving while others had died.  This trauma exacerbated he[r] psychiatric symptoms and she self medicated with alcohol and other drugs along with her psychiatric medications she was taking at the time.  She also had suicidal ideation at that time but never made an attempt.  By the time she came to see me she was experiencing insomnia, panic attacks, depression and hopelessness.  [Plaintiff] was also having nightmares about 911.
>
> Currently, [Plaintiff] has been meeting with me on a weekly basis.  She was also referred to Peggy Cook Psy.D, RN for EMDR treatment from 8/31/17 to 10/5/17.  [Plaintiff] has been more or less stable on medications . . . . Following the Parkland school shootings on February 14th, [Plaintiff]'s condition has deteriorated significantly.  She was crying uncontrollably, having nightmares and her symptoms worsened.  She has had her medications adjusted by her psychiatrist Dr. Brandemihl.  This has helped her to be able to continue with her therapy.
>
> Currently her DSM-5 [diagnosis] includes Bipolar I DO MRE Depressed, Post Traumatic Stress Disorder and Cannabis Use Disorder, Mild.  Although her symptoms are now controlled, [Plaintiff] is easily traumatized by events that are outside of her locus of control and this [is] going to be a significant stressor for the rest of her life.  Through EMDR and CBT we have made significant progress but

---

[6] See fn. 5.

[7] Although the letter is dated March 13, 2019, it appears that the letter was actually composed on March 13, 2018.

there is no indication that [Plaintiff] will be able to maintain steady employment. She is an accomplished graphic artist but does not have the ability to pursue her art as a professional or as meaningful employment.

In summary, my professional opinion and assessment lead me to the conclusion that [Plaintiff] meets the criteria for disability under SSI/SSDI. . . .

(*Id*. at 702.)

## E.    Plaintiff's Hearing Testimony

Plaintiff testified before the ALJ at the April 25, 2018 hearing.  (*Id*. at 96–137.)  Her testimony went to both her activities of daily living, and the effects of her mental impairments.

As to her activities of daily living, Plaintiff testified as follows: she has lived with her boyfriend for several years (*Id*. at 96); she retains the ability to drive, although rarely does (*Id*. at 96–97); she takes a ridesharing service to the gym two-to-three times each week (*Id*. at 105); she travels on planes to Florida to visit family roughly twice each year and recently traveled to Iceland (*Id*. at 113–14); she performs household chores such as putting away dishes and cleaning up after their two dogs (*Id*. at 117–20); she regularly socializes with her boyfriend's weekly gaming group and has, on a couple of occasions, had friends over to her house for art nights (*Id*. at 120); and she enjoys shopping at Trader Joe's after therapy appointments (*Id*. at 123).

Plaintiff also testified about her experience living with mental health impairments. According to her testimony, Plaintiff has been unable to find steady work because she considers herself unreliable and dyslexic.[8]  (*Id*. at 102.)  She further testified that: she chooses not to drive because she is fearful and often gets lost, which causes her to become frustrated (*Id*. at 97); she experiences panic attacks, which are triggered by crowds and public spaces (*Id*. at 109–10); she is prone to angry outbursts when in airports (*Id*. at 113); she has "bad days" and even "bad

---

[8] The undersigned notes that the record does not include evidence of a formal diagnosis of dyslexia.

weeks" during which she does not want to leave the house (*Id*. at 129); her medications help with some symptoms, but not all (*Id*. at 108–09, 132); she finds it helpful to regularly visit her therapist (*Id*. at 136–37); and she plans to continue to seek additional treatment (*Id*. at 136).

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial  evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V.     ANALYSIS

### A.     Treating Physician Opinions

The first issue Plaintiff raises in her Statement of Errors (ECF No. 10) is that the ALJ failed to properly evaluate the opinion evidence of her treating physicians (in this case, both psychiatrists). The ALJ must consider all medical opinions that she receives in evaluating a claimant's case. 20 C.F.R. § 404.1527(c). Medical opinions are defined to mean "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). When a treating physician's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 404.1527(c)(2); *Blakley*, 581 F.3d at 406 (internal quotations omitted). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not assign controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating physician's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [a claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's RFC and a determination on whether a claimant meets the statutory definition of "disabled." 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of [a claimant's] impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492–93 (6th Cir. 2010).

### 1. Dr. Gilman's Opinion

As noted above, the ALJ assigned "no more than little weight" to Dr. Gilman's March 2016 opinion. (*Id.* at 30–31.) In that opinion, Dr. Gilman concluded that Plaintiff had "poor" functioning in all four areas of mental health functioning—the lowest available rating. (*Id.* at 438.) The ALJ explained that she discounted Dr. Gilman's opinion because the severity of the limitations reflected therein are not supported by the other evidence of record:

> [T]he undersigned considered the assessment from Dr. Gilman, M.D., evidenced at Exhibit 2F. Dr. Gilman opined in March 2016 the claimant evidenced poor functioning in each area of mental health functioning listed. The record supported during 2016 the claimant had some breakthrough symptoms, but was tolerating her medications well, was sleeping sufficiently, had better control of her anxiety, and her behavior was better controlled, without suicidal or homicidal ideation (Exhibit 2F). Further, since that time, the record supports changes to medications and doses have resulted in increased symptom control. Therefore, the undersigned overall finds the statement no more than somewhat persuasive and affords the overall statement no more than little weight.

(R. at 31.)

In her Statement of Errors, Plaintiff contends that the ALJ's articulated reasons for declining to give Dr. Gilman's opinion controlling weight do not constitute "good reasons" because they are "cursory" and "not supported by substantial evidence." (Pl.'s Statement of Errors at 8–9, ECF No. 10.) To bolster that contention, Plaintiff highlights other parts of the record that support the limitations noted in Dr. Gilman's opinion—for example, Dr. Gilman's

treatment notes reflecting that Plaintiff exhibited symptoms including crying spells, poor sleeping, low motivation, irritability, and anxiety (R. at 447, 451, 471); treatment notes from other mental health professionals, including Mr. Catania and Dr. Brandemihl, reflecting similar symptoms and limitations (*Id.* at 497, 501, 504, 536, 540, 553, 556, 559–62); and Plaintiff's testimony at the administrative hearing that she experienced periodic panic attacks and did not want to leave the house on "bad" days. (*Id.* at 129–30.) Plaintiff argues that, "given the consistency among the treatment notes and the only sources of record that had a treating relationship with [Plaintiff], the ALJ's conclusory accusations should not be credited as 'good reasons' for rejecting Dr. Gilman's opinion of record." (Pl.'s Statement of Errors at 12, ECF No. 10.) The undersigned disagrees.

"This is the classic situation in which the record evidence could support two different conclusions. In such scenarios, the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, 2018 WL 2422035 at *10 (N.D. Ohio May 10, 2018), report and recommendation adopted, 2018 WL 2416232 (May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The existence of evidence in Plaintiff's favor does not mean that the ALJ's decision to discount Dr. Gilman's opinion is unsupported by substantial evidence. In fact, Dr. Gilman's own treatment notes—which the ALJ references in her discussion of the opinion at issue—provide substantial evidence (*i.e.*, evidence

that a reasonable mind might accept as adequate) in support of the ALJ's decision. Notes of Plaintiff's final two appointments with Dr. Gilman themselves describe symptom improvement following changes in medication, and behavior inconsistent with the severe limitations assessed in her March 2016 opinion. (R. at 454, 451.) The undersigned therefore concludes that the ALJ did not violate the treating physician rule or otherwise err in her consideration and weighing of Dr. Gilman's opinion.

### 2. Dr. Brandemihl's Opinions

The ALJ assigned "some weight" to Dr. Brandemihl's August 2017 opinion. (*Id*. at 32.) In that opinion, Dr. Brandemihl opined that Plaintiff had marked to extreme limitations in all four areas of mental health functioning as a result of her impairments. (*Id*. at 561.) He further opined that Plaintiff would miss more than four days of work each month due to mental health. (*Id*.) The ALJ explained that she discounted the opinion because certain portions of it were inconsistent with other evidence of record, as follows:

> The undersigned has read and considered the statement from Dr. Brandemihl, M.D., evidenced at Exhibit 7F. The physician completed a checkbox form noting mild to extreme symptoms in the activities under the areas of mental health functioning. He further assessed the claimant would miss more than four days per month and that any marijuana use was not responsible for her mental symptoms. Dr. Brandemihl was her treating medical provider. He is an acceptable source under the rules and regulations. The undersigned finds the checkbox form somewhat persuasive, in that the record supports some breakthrough symptoms, specifically some anxiety and irritability which would result in some mental limitation. However, the undersigned finds the form no more than somewhat persuasive, as the record does not support all of the checkbox symptom and limitation severity. Despite the breakthrough symptoms, the record noted and the claimant testified she was able to order her own car service to attend appointments and to go to the gym, she retained the ability to drive, could go shopping and often went to the store after her appointments, was able to perform household chores, enjoyed shopping online for "stupid" items, enjoyed drawing and watching television, as well as traveling with her boyfriend. These activities suggest the claimant was not as significantly/severely/extremely limited as he assessed. Further, later statements made by her therapist support her symptoms were "controlled" (Exhibit 22F). The undersigned finds the opinion she would miss 4 days of work per month unpersuasive, as the claimant did not routinely engage in treatment modalities that

required a recovery period and she did not routinely or consistently require any emergency treatment or inpatient hospitalizations related to her conditions/ symptoms. The undersigned finds the statements regarding drugs and alcohol consistent with those noted in the record, as the record supports the claimant used the substances, but did not report any symptom exacerbation and did not require emergency treatment or hospitalization related to intoxication. Therefore, overall, the undersigned finds this statement somewhat persuasive and affords it some weight.

The ALJ assigned "no more than partial weight" to Dr. Brandemihl's March 2018 letter opinion. (*Id*. at 32–33.) In that letter opinion, Dr. Brandemihl summarized his treatment of Plaintiff and opined that she "is totally disabled at this point." (*Id*. at 627.) The ALJ explained her reasoning as follows:

> The undersigned read and considered the more recent submission from Dr. Brandemihl, M.D., evidenced at Exhibit 16F. During his later submission, he reported the claimant reached maximum medical improvement and was totally disabled. He again noted that her marijuana use was not causing her mental symptoms. Here, it should be noted the terminology associated with maximum medical improvement is unique and not associated with the Social Security disability program. Further, the determination of disability is one reserved for the Commissioner. Within this statement, the physician provided no other functional limitations or restrictions regarding the claimant's mental status. The undersigned finds the statements regarding substance use consistent with prior statements by both himself and her therapist. Thus, the undersigned gives less weight to the statements regarding medical improvement/disability and greater weight to statements regarding her substance use. Therefore, overall, the undersigned finds the statement no more than somewhat persuasive and affords it no more than partial weight.

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Brandemihl's opinions. The ALJ articulated the weight she afforded each opinion and properly declined to afford them controlling weight. As to the August 2017 opinion, the ALJ declined to assign controlling weight on the basis that portions were unsupported by other evidence of record. *See Blakley*, 581 F.3d at 406 ("[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent with the other substantial evidence in the case record.") (internal quotation omitted). *See also* 20 C.F.R.

§ 404.1527(c)(2), (4) (providing that more weight will be given to medical opinions that are consistent with the record as a whole). The ALJ does not dispute Dr. Brandemihl's conclusion that Plaintiff's mental impairments limit her abilities, but takes issue with the *severity* of the limitations noted in his opinion. In particular, the ALJ finds Plaintiff's testimony about her daily activities and relationships with others inconsistent with such extreme limitations, and a demonstration of her ability to function beyond those extremes. (R. at 32.) For example, Plaintiff testified that she retains the ability to drive (although rarely does) (*Id*. at 96–97); she utilizes ridesharing services (*Id*. at 105); she goes to the gym two to three times per week (*Id*. at 105); she travels on planes at least twice each year (*Id*. at 113–14); she regularly socializes with her boyfriend's gaming group and occasionally has friends over to draw (*Id*. at 120); and she does chores around the house (*Id*. at 117–20). The ALJ further noted the lack of medical evidence supporting Dr. Brandemihl's opinion that Plaintiff's impairment would cause her to miss more than four days of work each month. (*Id*. at 32.) The undersigned therefore finds that the ALJ reasonably discounted Dr. Brandemihl's August 2017 opinion.

The ALJ explained that she discounted Dr. Brandemihl's March 2018 opinion because it did not offer any additional functional limitations or restrictions, and instead provided the doctor's conclusion on a topic reserved for the Commissioner. In that letter, Dr. Brandemihl stated that Plaintiff was disabled. A treating physician's opinions on issues reserved to the Commissioner, such as a determination of disability, "are not medical opinions" (20 C.F.R. § 404.1527(d)) and are therefore not entitled to any particular weight. *See Turner*, 381 Fed. App'x at 492–93. Dr. Brandemihl did not further opine as to any specific exertional limitations that the ALJ could translate into vocational terms. The undersigned therefore concludes that the

ALJ did not violate the treating physician rule or otherwise err in his consideration and weighing of Dr. Brandemihl's opinions.

## F.     Residual Functional Capacity Determination

The second and final issue Plaintiff raises in her Statement of Errors (ECF No. 10) is that the ALJ's determination of her RFC is not supported by substantial evidence. The undersigned disagrees.

The ALJ found that Plaintiff:

> [H]as the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except the [Plaintiff] could frequently climb ramps and stairs, but would be precluded from climbing ladders, ropes, and scaffolds. The [Plaintiff] could frequently balance, but would be limited to occasional stooping, kneeling, crouching, and crawling. The [Plaintiff] must avoid exposure to unprotected heights or moving mechanical parts. The [Plaintiff] could perform simple, routine tasks with occasional interaction with supervisors and co-workers, but she would be precluded from interacting with the public.

(R. 23.) In assessing Plaintiff's RFC, the ALJ considered the Plaintiff's subjective complaints, the efficacy of treatment, opinion evidence, and objective medical evidence and ultimately concluded that Plaintiff is not as limited as she contends. (*Id*. at 29.)

Plaintiff argues that she is more restricted than the functional capacity accounted for by the ALJ. (Pl.'s Statement of Errors at 15–16, ECF No. 10.) She relies on the opinions of Dr. Gilman, Dr. Brandemihl, and Mr. Catania for support. (*Id*.) However, the ALJ's analysis of the evidence demonstrates that she found the severity of all three professionals' proposed limitations unsupported by the record. For example, she considered progress notes from various mental health professionals showing that Plaintiff's symptoms improved with modifications to her medications. (*Id*. at 26–27 (citing *Id*. at 361, 375, 492, 530, 583, 585, 702).) She also considered Plaintiff's testimony relating to her activities of daily living, including that she travels on airplanes not infrequently, and had recently flown internationally (*Id*. at 27–28 (citing *Id*. at 113–

16)), and she regularly socializes with her boyfriend's gaming group (*Id*. at 18 (citing *Id*. at 120)).  The ALJ reasonably concluded that such activities are inconsistent with the severity of the limitations noted by Dr. Gilman, Dr. Brandemihl, and Mr. Catania.  What's more, Mr. Catania's opinion is not entitled to deference from the ALJ, because he is not a medically acceptable source for purposes of Plaintiff's claim.

Instead, the ALJ relied on the State agency consultants' recommendations to craft Plaintiff's RFC, to the extent she found those recommendations consistent with the record.  (*Id*. at 33–34.)  As noted above, the consultants opined that Plaintiff's mental conditions limit her to work consisting of "simple 1-2 step tasks" involving limited social interaction.  (*Id*. at 154, 166.)  The ALJ interpreted this opinion as imposing limitations in the areas of "understanding and applying information" and "social functioning."  (*Id*. at 33.)  The ALJ found a restriction to 1-2 step tasks to be inconsistent with the Plaintiff's testimony regarding her daily activities, noting that many of those activities require higher functioning in understanding and applying information.  (*Id*. at 33–34.)  As a result, the ALJ included the State agency consultants' recommended restriction related to social functioning into the RFC, along with a modified restriction related to understanding and applying information (*i.e.*, simple, routine tasks).

It was not error for the ALJ to rely on the opinions of the State agency consultants rather than Plaintiff's treating physicians and social worker.  "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  SSR 96-6p, 1996 WL 374180, *3; *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (State agency medical consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under

the [Social Security] Act;" thus, in some cases, "an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating . . . source." (first alteration in original) (internal quotation marks omitted)); *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."). The undersigned therefore finds that the ALJ's decision to craft an RFC with less stringent limitations that those proposed by Dr. Gilman, Dr. Brandemihl, and Mr. Catania was within the permissible "zone of choice." *Mullen*, 800 F.2d at 545.

## VI.    DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report

and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE